IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MAURICE J. BRADFORD,

    Plaintiff,

              CIVIL ACTION NO.

v.            1:11-cv-0787-JEC

CITY OF ROSWELL, a Municipal
Corporation, EDWIN WILLIAMS,
KEN MCRAE, JEREMIAH J.
STEPHENS, KEVIN R. SMITH, KAY
LOVE,

    Defendants.

## ORDER & OPINION

   This case is before the Court on defendants' Motion for Summary Judgment [52].  The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendants' motion [52] should be **GRANTED**.

## BACKGROUND

   This is a § 1983 case arising out of plaintiff's employment with defendant City of Roswell (the "City").  The City hired plaintiff as a police officer in February, 2006.  (Compl. [1] at ¶ 11.)  Upon plaintiff's completion of training and a probationary period, the City assigned him as a patrol officer.  (*Id.* at ¶ 12.)  At all relevant times during plaintiff's employment, defendants McRae,

Stephens, and Smith were fellow City police officers and defendant Williams was the City's Chief of Police. (*Id.* at ¶¶ 6-9.) Defendant Love was the City's Human Resources Department Head and subsequently the City Manager. (*Id.* at ¶ 10.)

On August 13, 2010, plaintiff was driving his City police vehicle when three of his tires simultaneously ruptured. (Defs.' Statement of Material Facts ("DSMF") [52] at ¶ 1.) Plaintiff claims that, at the time of the incident, he heard a noise that sounded like a shotgun and then his vehicle began to jerk back and forth. (*Id.* at ¶¶ 2-3.) Plaintiff says that he drove 25-50 yards, and then stopped and exited the vehicle. (*Id.* at ¶ 4.) He called his supervisor, who instructed him to have the vehicle towed to Public Works. (*Id.*)

Defendant Stephens met plaintiff at the scene and conducted an investigation into the incident. (*Id.* at ¶ 9.) Pursuant to the investigation, Stephens inspected plaintiff's vehicle and found that the tires showed no evidence of puncture by a foreign object. (DSMF [52] at ¶ 13.) Noting that there was concrete dust on the tire rims, along with mud and scrapes under the front bumper, Stephens determined that the damage to the vehicle suggested a collision with "a fixed object, such as a concrete curb." (*Id.* at ¶ 14.) However, in his conversation with Stephens, plaintiff denied striking anything and said that he was simply driving along the road when he "heard a loud bang" and "noticed that three tires were flat on his vehicle."

2

(Stephens Report [52] at Ex. A, p. 14.)

Plaintiff initially refused to provide a written statement describing his account of the incident. (DSMF [52] at ¶ 10.) He eventually produced a statement, after receiving direct orders to do so from his sergeant Scott Waters. (*Id.* at ¶ 12.) In his statement, plaintiff again indicated that he was simply driving along the road when he heard an "extremely loud bang . . . like a shotgun" and then noticed when he was able to exit the vehicle that three of his tires were flat. (Pl.'s Statement [52] at Ex. A, p. 18.)

Following his investigation, defendant Stephens prepared two reports. (DSMF [52] at ¶¶ 15-19.) In his initial report, Stephens indicated that he could not "locate any roadway or physical evidence [as] to how the event occurred or determine the location of the event." (*Id.* at ¶ 15.) In his second report, Stephens concluded that the damage to plaintiff's vehicle was consistent with striking a fixed object such as a curb at high speed, but that the exact location of the crash could not be determined because plaintiff had "refused to cooperate with the investigation." (*Id.* at ¶¶ 16-17.)

Thereafter, defendant Williams instigated an Internal Affairs ("IA") investigation into the incident. (*Id.* at ¶ 27.) The IA investigator reviewed the reports and other available evidence and also interviewed David Brady, the manager of a Roswell tire store. (*Id.* at ¶ 29.) After looking at several photos, Brady concluded that

3

the vehicle "had either hit a median or curb and that the vehicle probably left the roadway." (DSMF [52] at ¶ 30.) According to Brady, a vehicle would "absolutely not" suffer the type of damage that was apparent in the photos without striking something. (*Id.* at ¶ 31.)

The IA investigator ultimately found sufficient evidence to prove that plaintiff had violated City employment policies prohibiting: (1) lying during an investigation, (2) giving false or misleading information, and (3) failing to cooperate with an investigation. (*Id.* at ¶¶ 28, 32.) Based on the IA findings, defendant Smith terminated plaintiff's employment on September 30, 2010. (*Id.* at ¶ 33.) Plaintiff was notified that he had a right to appeal the termination decision and to a hearing before Director Love. (*Id.* at ¶ 34.)

Plaintiff met with Love on October 12, 2010 to contest the termination. (DSMF [52] at ¶ 36.) Although plaintiff complains that he was not assisted by counsel or able to present evidence, he concedes that he had an opportunity during the meeting to explain his side of the story. (*Id.* at ¶ 37.) Plaintiff testified during his deposition in this litigation that he told Love the truth, as he understood it. (*Id.* at ¶ 38.) Love concluded that the charges against plaintiff were sustained by "the visible and documented degree of damage" to plaintiff's vehicle "contrasted by [his]

4

repeated statements . . . that [he] d[id] not know what happened or how it happened." (*Id.* at ¶ 39.) Plaintiff sought review of Love's decision by the City's Personnel Committee, but the Committee rejected the appeal. (*Id.* at ¶¶ 40-41.)

Plaintiff subsequently filed this action asserting federal constitutional claims under § 1983 and state claims for wrongful termination and breach of contract. (Compl. [1] at ¶¶ 72-93.) Defendants moved for summary judgment, and the Court granted the motion as unopposed when plaintiff failed to respond. (Order [57].) Upon plaintiff's motion for relief and showing of excusable neglect, the Court set aside its summary judgment order and reopened the case. (Order [63].) Defendant's motion for summary judgment was deemed refiled on the date of the Court's order reopening the case, and is now before the Court for a decision on the merits.

## **DISCUSSION**

### I. **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine when the evidence is such that a

reasonable jury could return a verdict for the nonmovant. *Id.* at 249-50.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be "'no genuine issue as to any material fact,'" as "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id*. at 322-23 (quoting Fed. R. Civ. P. 56(c)).

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323. However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the non-moving party's case." *Id*. at 325. After the movant has carried his burden, the non-moving party is required to "go beyond the pleadings" and present competent evidence designating "'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324.

6

In ruling on a motion for summary judgment, the Court must view the evidence and factual inferences in a light most favorable to the non-moving party.  *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988).  However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48 (1986).  The requirement is that there be no "*genuine* issue of *material* fact."  *Id.*

## II.   PLAINTIFF'S FEDERAL CLAIMS

To prevail on his federal claims under § 1983, plaintiff must show that he:  (1) was deprived of a constitutional right, (2) under color of state law.  *Myers v. Bowman,* 713 F.3d 1319, 1329 (11th Cir. 2013).  There is no *respondeat superior* liability under § 1983. *Craig v. Floyd Cnty., Ga.,* 643 F.3d 1306, 1310 (11th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978)). Thus, plaintiff must demonstrate that the constitutional violation was the result of a governmental policy or custom to hold the City liable.  *Id.*  In addition, plaintiff must overcome the qualified immunity defense to impose liability on the individual defendants. *Castle v. Appalachian Tech. Coll.,* 631 F.3d 1194, 1197 (11th Cir. 2011)(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  As discussed below, plaintiff has failed to meet any of these

7

requirements.

    **A.**   **<u>There is no evidence to suggest a constitutional violation.</u>**

      1.   <u>Equal Protection</u>

Plaintiff vaguely asserts that his termination violated the Equal Protection Clause.[1]  (Compl. [1] at ¶¶ 76, 83 and 89.) Plaintiff does not allege that defendants treated him differently in any aspect of his employment or termination on the basis of his membership in a particular class or group.  The Court thus assumes that he is proceeding on a "class of one" theory. *See Grider v. City of Auburn, Ala.,* 618 F.3d 1240, 1263-64 (11th Cir. 2010).  It is well-settled that the "class of one" theory does not apply in the public employment context. *See Engquist v. Oregon Dep't of Ag.,* 553 U.S. 591, 594 (2008)("a 'class-of-one' theory of equal protection has no place in the public employment context") and *Alford v. Consol. Gov't of Columbus,* 438 Fed. App'x 837, 840 (11th Cir. 2011)("*Engquist* holds that class-of-one equal protection claims are categorically prohibited in the public employment context").

Assuming that a "class-of-one" theory could have any relevance to an employment case, it clearly does not apply here.  To prevail under the "class-of-one" theory, plaintiff must show that he was

---

    [1]  In the complaint, plaintiff claims that he has been deprived of his "IV Amend." right to equal protection.  (Compl. [1] at ¶ 89.) The Court assumes this was a citation error, as none of plaintiff's factual allegations implicate the Fourth Amendment.

"intentionally treated differently from others who were 'similarly situated' and that there is no rational basis for the difference in treatment." *Alford,* 438 Fed. App'x at 840 (quoting *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000)). Plaintiff does not make any attempt to comply with this requirement. In his complaint and in his brief, plaintiff focuses entirely on the events surrounding his own termination. The facts recited in these filings certainly reflect plaintiff's belief that defendants treated him unfairly. However, plaintiff does not identify even one "similarly situated" comparator or explain how he was "treated differently" from that individual. As these essential elements are lacking, no rational jury could find that plaintiff's termination violated his equal protection rights. *Id.*

> 2. <u>First Amendment</u>

Plaintiff's First Amendment claim is likewise invalid on its face. In support of this claim, plaintiff alleges that defendant Williams orchestrated his termination because Williams mistakenly believed that plaintiff had leaked an unflattering report about the police department to a local newspaper. (Compl. [1] at ¶¶ 17-18, 30-32.) Plaintiff concedes, indeed he insists, that he did not provide any information to the newspaper. (DSMF [52] at ¶ 44.) According to plaintiff, he was terminated in retaliation for his perceived speech to the newspaper rather than his actual speech. (Pl.'s Resp. Br.

AO 72A
(Rev.8/82)

[61] at 17-18.)

Plaintiff does not cite any legal authority to support his novel First Amendment theory, and the courts that have considered the theory have unanimously rejected it. *See Ambrose v. Township of Robinson,* 303 F.3d 488, 495 (3rd Cir. 2002)("perceived support" or speech cannot form the basis of a First Amendment claim) and *Jones v. Collins,* 132 F.3d 1048, 1054 (5th Cir. 1998)(a "free speech claim depends on speech"). As these courts have recognized, a general threshold requirement for any First Amendment claim is protected speech. *Battle v. Bd. of Regents for Ga.,* 468 F.3d 755, 760 (11th Cir. 2006). Plaintiff makes no attempt to establish this required element. In fact, he actively denies that it exists. Accordingly, there is no basis upon which a jury could rationally conclude that his termination violated the First Amendment.

### 3. Due Process

Finally, plaintiff suggests that his termination violated his due process rights. (Compl. [1] at ¶¶ 76, 83, 89.) There are no specific allegations in the complaint, much less evidence in the record, to support a substantive due process claim. *See McKinney v. Pate,* 20 F.3d 1550, 1556 (11th Cir. 1994)("[t]he substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty'")(quoting *Palko v. Connecticut,* 302 U.S. 319, 325

10

(1937)) and *Bell v. Metro. Atlanta Rapid Transp. Auth.,* 521 Fed. App'x 862, 865 (11th Cir. 2013)("Under Georgia law, a public employee generally does not have a vested right to [continued] employment"). The Court thus assumes that plaintiff is asserting a procedural due process claim.

To prevail on a procedural due process claim, plaintiff must prove: (1) that he was deprived of a constitutionally protected liberty or property interest, (2) by state action, and (3) in the absence of constitutionally adequate process. *Catron v. City of St. Petersburg,* 658 F.3d 1260, 1266 (11th Cir. 2011). Assuming the first two requirements are met, it appears that plaintiff received constitutionally adequate process in connection with his termination. *See Reams v. Irvin,* 561 F.3d 1258, 1263 (11th Cir. 2009)("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'")(quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Plaintiff received notice of the charges pending against him and the ongoing internal affairs investigation. (Compl. [1] at ¶ 45.) Following the investigation, plaintiff was given a formal separation notice stating the reasons for his termination and advising him of his right to appeal. (*Id.* at ¶ 51 and DSMF [52] at ¶ 34.) During his subsequent meeting with Director Love, plaintiff had the opportunity to address the charges against him and tell his side of the story. (DSMF [52] at ¶¶ 37-38.)

11

In addition, plaintiff has failed to prove or even allege that adequate state remedies were unavailable to cure any procedural deprivations that may have been committed by the City.  The Eleventh Circuit has "repeatedly articulated the basic rule that a procedural due process violation has not occurred when adequate state remedies are available." *Goodman v. City of Cape Coral*, ___ Fed. App'x ___, 2014 WL 3702433, at *3 (11th Cir. July 28, 2014)(citing *Reams v. Irvin*, 561 F.3d 1258, 1267 (11th Cir. 2009)).  This rule recognizes that a state must have an opportunity to remedy procedural failings "before being subjected to a claim alleging a procedural due process violation." *Cotton v. Jackson,* 216 F.3d 1328, 1331 (11th Cir. 2000).  Applying the rule, plaintiff must show that Georgia's courts could not have provided an adequate remedy before he can recover for any procedural due process deprivation under § 1983.  *Id.  See also East v. Clayton Cnty., Ga.,* 436 Fed. App'x 904, 913 (11th Cir. 2011)(discussing *Cotton*).

In *Cotton*, the Eleventh Circuit held that the writ of mandamus is an available and adequate state remedy to protect the due process rights of a Georgia plaintiff alleging violations stemming from his termination. *Cotton,* 216 F.3d at 1332-33.  The Georgia Supreme Court subsequently adopted the reasoning of *Cotton*, specifically holding that "a writ of mandamus" is an available remedy to cure procedural violations related to a public employee's termination. *Joiner v.*

12

*Glenn*, 288 Ga. 208, 209-10 (2010)("a writ of mandamus is a procedural remedy" that is available to cure procedural violations).  Under *Cotton* and *Joiner*, plaintiff's failure to seek a writ of mandamus or to pursue other available state remedies is fatal to his procedural due process claim.  *East,* 436 Fed. App'x at 913.

   B.   **There is no basis for imposing municipal liability**.

   Even if plaintiff could show a constitutional violation, he has failed entirely to present any rational basis for imposing liability on the City.   As mentioned above, there is no *respondeat superior* liability under § 1983.  *Craig,* 643 F.3d at 1310.  In order to hold the City liable on his federal claims, plaintiff must show that his constitutional rights were violated as a result of a City custom or policy.  *Id.*  Moreover, "[i]t is not sufficient for [the City's] policy to be tangentially related to [plaintiff's] constitutional deprivation." *Cuesta v. Sch. Bd. of Miami-Dade Cnty.,* 285 F.3d 962, 967 (11th Cir. 2002).  Rather, the City policy must be the "moving force of the constitutional violation" in order to establish liability under § 1983.  *Id.* (citing *Gilmere v. City of Atlanta,* 737 F.2d 894, 901 (11th Cir. 1984)).

   Plaintiff does not come close to meeting the above standard.  In his complaint, plaintiff summarily states that defendants Williams and Love are "department chiefs with policy making authority" and that their actions were "part of the custom . . . within the Roswell

13

Police Force." (Compl. [1] at ¶¶ 73-74.) He also alleges that the actions of the defendants were "ratified" by the City and that he suffered various deprivations as a result of the City's "unconstitutional policies." (*Id.* at ¶¶ 75, 89.) Plaintiff does not provide any evidence to support these conclusory allegations, which are clearly insufficient to defeat a motion for summary judgment. *See Doe v. Sch. Bd. of Broward Cnty., Fla.,* 604 F.3d 1248, 1267 (11th Cir. 2010)(finding plaintiff's "conclusory assertion of a custom or policy" insufficient on summary judgment) and *Harvey v. City of Stuart,* 296 Fed. App'x 824, 826 (11th Cir. 2008)("vague and conclusory allegations" of a custom or policy are insufficient to support a claim for municipal liability under § 1983). For this additional reason, the Court **GRANTS** summary judgment to the City on plaintiff's § 1983 claims.

    C.   **<u>Qualified immunity applies to the individual defendants.</u>**

Finally, and again assuming that plaintiff could demonstrate a constitutional violation, his § 1983 claims against the individual defendants are barred by qualified immunity. A public official is entitled to qualified immunity if an objectively reasonable official in the same situation could have believed that his actions were lawful. *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (citing *Anderson v. Creighton*, 483 U.S. 635, 638-41 (1987)). To receive qualified immunity, the official must first demonstrate that

14

he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Id*. The burden then shifts to the plaintiff to show that qualified immunity is not appropriate. *Id.*

Plaintiff does not deny, and it is apparent to the Court, that the individual defendants were acting within their discretionary authority when they investigated the August 13 incident and terminated plaintiff's employment. *See Holloman v. Harland,* 370 F.3d 1252, 1265 (11th Cir. 2004)(explaining that the relevant inquiry is whether the acts in question "are of a type that fell within the employee's job responsibilities"). Plaintiff therefore has the burden of showing that the actions of the individual defendants violated a "clearly established" constitutional right. *Hope v. Pelzer,* 536 U.S. 730, 739 (2002). To meet that burden, plaintiff must cite case law giving defendants "fair warning" that their conduct was unlawful. *Id*. at 739-740. He has failed to do so. The Court thus finds that qualified immunity applies, and **GRANTS** summary judgment to the individual defendants on this alternative ground.

## III. <u>PLAINTIFF'S STATE LAW CLAIMS</u>

As all of plaintiff's federal claims have been removed from the case, § 1367(c)(3) applies. That section states that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims

15

over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has observed that:

> a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendant state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)(footnote omitted). *See also Hardy v. Birmingham Bd. of Educ.*, 954 F.2d 1546, 1550 (11th Cir. 1992).

The Court concludes that dismissal of plaintiff's state law claims is appropriate in this case because plaintiff's federal claims have been dismissed. Moreover, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)(footnotes omitted). Accordingly, the Court **DISMISSES without prejudice** plaintiff's remaining state law claims.

16

**<u>CONCLUSION</u>**

For the foregoing reasons, the Court **GRANTS** defendants' Motion for Summary Judgment [52].  The clerk is directed to **CLOSE** this case.


SO ORDERED, this 30th day of July, 2014.


<u>/s/ Julie E. Carnes</u>
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)